**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

ERNEST T. BOYKIN, III,

             Defendant.

Crim. Action No. 14-201 (EGS)

Crim. Action No. 15-164 (EGS)

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Ernest T. Boykin, III ("Mr. Boykin") is currently serving a 15-year sentence for one count of Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of Heroin, in violation of 21 U.S.C. § 846, 84l(a)(1) and (b)(l)(A)(i); one count of Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(l); and one count of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 84l(a)(l) and (b)(l)(A)(i). *See* Final Presentence Investigation Report ("PSR"), ECF No. 67 at 1.[1] Mr. Boykin "has served less than 6 years of his 15-year sentence," and has a "projected release date of August 17, 2027." *See* Gov't's Opp'n, ECF No. 81 at 1, 4.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document. All cited documents are filed in Docket No. 14-cr-201.

He is currently housed at the Federal Bureau of Prisons' ("BOP")
Rivers Correctional Facility ("Rivers"). Def.'s Mot., ECF No. 77
at 1. Pending before the Court is Mr. Boykin's Emergency Motion
for Compassionate Release 18 U.S.C. § 3582(c)(1)(A)(i) in light
of the COVID-19 pandemic. Def.'s Mot., ECF No. 77. Upon careful
consideration of the motion, the opposition, the reply thereto,
the applicable law, and the entire record herein, the Court
**GRANTS** Mr. Boykin's Emergency Motion for Compassionate Release.

## I.   **Background**

On July 17, 2014, Mr. Boykin was arrested in Prince
George's County, Maryland after firefighters, responding to a
fire at his home, discovered "approximately $117,550.00 of U.S.
currency," a "substance [that] field-tested positive for heroin
and weighed approximately 2,573.9 grams," a "9 mm Taurus PT709
[handgun] with an obliterated serial number[,] and a small
amount of marijuana in the nightstand of the master bedroom."
Gov't's Submission of Proffer of Facts in Support of Def.'s Plea
of Guilty ("Factual Proffer"), ECF No. 62 at 8-9. Prior to his
arrest, Mr. Boykin was the subject of a months long FBI
investigation, during which "the FBI discovered that [Mr.
Boykin] was obtaining large quantities of heroin, and then
distributing heroin in the community." Gov't's Opp'n, ECF No. 81
at 2. "From February to June of 2014, a cooperating witness,
under the supervision of law enforcement officers, made

2

approximately seven controlled drug purchases from [Mr. Boykin], totaling over 100 grams of heroin." *Id.*

Mr. Boykin, who had "previous convictions for attempted burglary of a dwelling, possession of cocaine, distribution of cocaine, attempted possession of cocaine, and possession with intent to distribute heroin," *see id.* at 3, was indicted in this court, Docket No. 14-cr-201, on (1) "one count of conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin," Def.'s Mot., ECF No. 77 at 1-2; and (2) "using, carrying, or possessing a firearm during a drug trafficking crime." *Id.* at 2. He was also charged in the United States District Court for the District of Maryland, Docket No. 14-cr-490, with (1) "possession of a firearm by a prohibited person," and (2) "possession with intent to distribute 1 kilogram or more of heroin." *Id.* "The Maryland case was transferred to this district as [Docket] No. 15-cr-164." *Id.* At the time these charges were filed, Mr. Boykin "was on probation for his most recent conviction (possession with intent to distribute heroin)." Gov't's Opp'n, ECF No. 81 at 3.

On November 13, 2015, pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement, Mr. Boykin pled "guilty to Count 1 in [Docket] No. 14-cr-201 and Counts 1 and 2 in [Docket] No. 15-cr-164, with the parties agreeing to

concurrent terms of 15 years imprisonment and 5 years of supervised release in both cases." Def.'s Mot., ECF No. 77 at 2.

Judge Rosemary Collyer imposed the agreed upon sentence of 180 months confinement, 60 month supervised release, and "recommended that Mr. Boykin be allowed to participate in the 500-hour drug treatment program (known as RDAP)." *Id.* at 3. "Mr. Boykin did not appeal and has not filed any other collateral challenges to his convictions or sentence." *Id.* Thus far, Mr. Boykin has "served approximately 68 months (5 years, 8 months) of his 180-month (15-year) sentence in this case." Gov't's Opp'n, ECF No. 81 at 4.

## II.   Legal Standard

The First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, § 603, 132 Stat. 5194, 5238-5240 (2018), provides the Court with the authority to modify the sentence of a defendant after its imposition, upon a motion by the defendant. To be considered for a sentence modification, the defendant must have either fully exhausted all administrative rights to appeal the BOP' failure to bring a motion for release on his behalf, or allowed a lapse of 30 days from the time the BOP received his request, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A). After receiving a properly filed motion, the Court must first determine whether there are "extraordinary and compelling reasons [that] warrant . . . a reduction" in sentence and that

4

"such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. To be in line with the Sentencing Commission's policy statement, beyond finding that there are "extraordinary and compelling reasons" that warrant a reduction, the Court must also find that the "defendant is not a danger to the safety of any other person or to the community." *See* U.S.S.G. 1B1.13(2). Finally, if the Court finds that there are "extraordinary and compelling reasons" for a reduction and that the reduction aligns with the Sentencing Commission's policy statement, then the Court must consider the factors set forth in 18 U.S.C. § 3553(a). *Id*.

## III.  Analysis

### A. Mr. Boykin Exhausted His Administrative Remedies

Although the parties agree that Mr. Boykin has exhausted his administrative remedies, *see* Def.'s Mot., ECF No. 77 at 21; *see also* Gov't's Opp'n, ECF No. 81 at 6, the Court will review the record even though administrative exhaustion is non-jurisdictional in this context. *See United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020) (noting that the exhaustion requirement "simply delineates the process for a party to obtain judicial review, [and does] not refer[] to the adjudicatory capacity of courts."). "Mr. Boykin requested compassionate release from his institution on April 2, and was denied on April 17." Def.'s Mot., ECF No. 77 at 21. "He

appealed on or about April 25, 2020," but did not receive a response. *Id.* More than 30 days elapsed between BOP receiving Mr. Boykin's request and his filing for compassionate release. Accordingly, the Court finds that Mr. Boykin has met his exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Mr. Boykin Has Provided A Sufficient Extraordinary and Compelling Reason for Compassionate Release

The Court must now determine whether Mr. Boykin has provided sufficient "extraordinary and compelling reasons" that would warrant a reduction in his sentence. *See United States v. Morris*, No. 12-CR-154 (BAH), 2020 WL 2735651, at *2 (D.D.C. May 24, 2020)(citing § 3582(c)(1)(A)(i)). In its commentary, the Sentencing Commission provides guidance on what circumstances would amount to "extraordinary and compelling reasons," including, as most applicable here, that the "defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13 cmt. n.1(A)(ii).

Mr. Boykin argues that his "personal history, characteristics, and medical conditions make him particularly vulnerable to Covid-19 and put him in grave danger in a prison environment during this pandemic." Def.'s Mot., ECF No. 77 at

22. First, Mr. Boykin notes that the "virus disproportionately affects males and African Americans," even though "the CDC does not list gender as an at-risk condition." *Id*. Mr. Boykin then argues that the virus is specifically dangerous for him due to his many underlying health conditions, including suffering from: (1) severe obesity, noting that "[s]evere obesity increases the risk of a serious breathing problem called acute respiratory distress syndrome ('ARDS'), which is a major complication of COVID-19," *id.* at 24; (2) asthma, which the "CDC makes clear that '[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19 [because] COVID-19 can affect [the] respiratory tract,'" *id.* at 25; (3) obstructive sleep apnea, noting that a French study "found that '[o]bstructive sleep apnea []raised the risk of early death in these patients,'" *id.* at 25-26 (citing a New York Times article); (4) hypertension, contending that "[p]eople with high blood pressure 'are among those who are at heightened risk for more severe complications should they contract Covid-19,'" *id.* at 26; (5) diabetes-though he notes that he is only prediabetic-because "'[d]iabetes and high glucose levels are associated with increased complications, respiratory failure and mortality in hospitalized patients with COVID-19,'" *id.* at 27; and (6) depression and Post Traumatic Stress Disorder, contending that "'[i]ndividuals suffering from serious mental illness can have

compromised immunity and are at risk of severe illness and death
during the coronavirus pandemic.'" *Id.* at 28. Finally, Mr.
Boykin avers that "[t]he high infection rate of Covid-19 and
high mortality rate for those with pre-existing conditions,
coupled with the proven inability of the BOP to address a surge
in cases, makes clear that these are just the kind of
extraordinary and compelling circumstances that warrant a
sentence reduction in this case." *Id.* at 30.

    In opposition, the Government contends that even with Mr.
Boykin's health conditions, "but for the COVID-19 pandemic, [he]
would not present any viable basis for compassionate release
under 18 U.S.C. § 3582(c)(1)(A)." Gov't's Opp'n, ECF No. 81 at
12. But in noting that Mr. Boykin's "medical records show that
he suffers from severe obesity," the Government acknowledges
that "[the CDC has identified severe obesity . . . as elevating
the risk of becoming seriously ill from COVID-19." *Id.* at 13. In
making its acknowledgement, the Government agrees that Mr.
Boykin's condition presents "a serious physical or medical
condition . . . that substantially diminishes [his]
ability . . . to provide self-care within the environment of a
correctional facility," which is in line with the "extraordinary
and compelling circumstances" guidance from the Sentencing
Commission. *Id.* As such, the Government concedes that Mr. Boykin

has "satisfied [the 'extraordinary and compelling' reason]
requirement based upon his diagnosed severe obesity." *Id.*

In view of Mr. Boykin's medical history, and the
Government's agreement that Mr. Boykin's severe obesity
diagnosis falls within the guidance from the Sentencing
Commission, the Court is persuaded that Mr. Boykin has provided
a sufficient "extraordinary and compelling reason" that would
warrant a reduction in his sentence. *See* U.S.S.G. 1B1.13 cmt.
n.1(A)(ii).

### C. Mr. Boykin Does Not Present a Danger to His Community

As the Court has found that Mr. Boykin has presented an
extraordinary and compelling reason for a reduction in his
sentence, to ensure the reduction is consistent with the
Sentencing Commission's policy statement, the Court must now
determine whether he presents a danger to the community. *See*
*Morris*, 2020 WL 2735651, at *2 (citing U.S.S.G. 1B1.13(2)).

Mr. Boykin argues that his "offense, while a serious one
for which he is deeply remorseful, was not a violent offense,
and there is no violence alleged in his past." Def.'s Mot., ECF
No. 77 at 30. He further argues that "any limited risk can be
mitigated by supervision." *Id.* at 34 (internal brackets and
citation omitted). Mr. Boykin indicates that upon his release,
he would "live with his father and step-mother in their 6-
bedroom home in Northwest Washington, D.C." *Id.* at 35. "Mr.

Boykin [would] have his own room and ample space to self-isolate
. . . ." *Id.* Though the Government agrees that Mr. Boykin has
met his "extraordinary and compelling reason" requirement, the
Government argues that he is not entitled to a reduction in his
sentence because he "failed to demonstrate that he does not pose
a danger to public safety and that the § 3553(a) sentencing
factors weigh in favor of release." Gov't's Opp'n, ECF No. 81 at
14. Specifically, the Government contends that "the nature of
the instant offense here weighs against [Mr. Boykin's] release"
since it involved not only the distribution of illegal
narcotics, but also the illegal possession of a firearm. *See id.*
In addition, the Government argues that Mr. Boykin's criminal
history-"convictions for attempted burglary of a dwelling,
possession of cocaine, distribution of cocaine, attempted
possession of cocaine, and possession with intent to distribute
heroin"-also weigh against release. *Id.* Finally, the Government
notes that Mr. Boykin "was still on probation for his most
recent conviction (possession with intent to distribute heroin)
when he committed the drug distribution and firearm offenses in
the instant case." *Id.* at 14-15. In response, Mr. Boykin notes
that during his sentencing hearing, Judge Collyer noted that
"'when he's not addicted [he] has respect for [the] law.'"
Def.'s Reply, ECF No. 83 at 12; *see also* Sent'g Tr., ECF No. 82
at 35. He then reiterates that "any risk to public safety can be

10

addressed through the length and conditions of his supervised release." Def.'s Reply, ECF No. 83 at 10.

In determining whether Mr. Boykin is a danger to the community, the Court considers 18 U.S.C. § 3142(g) Factors. *See* U.S.S.G. 1B1.13(2). Examining the first § 3142(g) factor-the nature and circumstances of the offense charged-the Court finds that it tilts in favor of release. Based on the Factual Proffer, which Mr. Boykin agreed to, the offense involved the distribution of drugs and the possession of a firearm. *See* Factual Proffer, ECF No. 62 at 2-8. Though very serious, the offense is nonviolent and, in this instance, does not raise a direct threat to the community.

Section 3142(g)'s third factor-history and characteristics of the defendant-also weigh against continued confinement. Though Mr. Boykin has a lengthy criminal history, " *see* Gov't's Opp'n, ECF No. 81 at 14; *see also* FPSR, ECF No. 67 at 15-19, none of his previous convictions, nor the current offense include acts of violence. In addition, the record indicates that Mr. Boykin has several children, who lived with him and whom he supported prior to his arrest. *See* PSR, ECF No. 67 at 23. The Court also observes that Mr. Boykin has many health conditions, *see id*. at 23-24 (noting that Mr. Boykin had "suffered from asthma throughout his life," been "diagnosed with hypertension" prior to his 2013 conviction, and been diagnosed with PTSD in

2009 or 2010), that make the pandemic very dangerous for him and heightens his need to practice proper social distancing. In this instance, Mr. Boykin's health concerns outweigh his criminal history. Accordingly, the Court finds that Mr. Boykin does not present a danger to his community. *Cf. United States v. Powell*, No. 05-cr-61 (ESH), ECF No. 78, at *4 (D.D.C. June 18, 2020) (ordering the release of a 41-year-old defendant, convicted of drug and firearm charges, due to the defendant's "degenerative peripheral nerve disorder, Charcot-Marie-Tooth ('CMT') disease, . . . history of mental illness, his age, race, and gender").

### D. **The § 3553(a) Factors Support a Reduction in Sentence**

Finally, after finding that Mr. Boykin has provided an extraordinary and compelling reason for a reduction and that he would not pose a danger to the community if he were to receive a reduction, consistent with the Sentencing Commission's statement, the Court must now reevaluate his sentence under the applicable § 3553(a) factors. *See Morris*, 2020 WL 2735651, at *2 (citing § 3582(c)).

Stating that his was a nonviolent offense, Mr. Boykin argues that his current 15-year sentence was "predicated on a career offender designation that overstated the seriousness of his criminal history." Def.'s Mot., ECF No. 77 at 30. Mr. Boykin then notes that the "United States Sentencing Commission has itself recommended that the career offender provision focus on

those with at least one violent crime and not apply to those with drug-only offenses." *Id.* In addition, Mr. Boykin contends that a lesser sentence is supported by his rehabilitation, as shown by his use of writing as a form of therapy and his completing a novel while in prison. *See id.* at 31. In opposing a sentence reduction, the Government notes that Mr. Boykin has served less than half of his 15-year sentence, only completed 10 courses while incarcerated, and that he has previously failed to comply with supervision conditions. *See* Gov't's Opp'n, ECF No. 81 at 14-15. In reply, Mr. Boykin contends that his 15-year sentence was "negotiated in light of a possible life sentence that a change in law has now taken off the table." Def.'s Reply, ECF No. 83 at 1.

At Mr. Boykin's sentencing, the court could not have known that in just a few years, the nation would experience a pandemic that would put someone with Mr. Boykin's health conditions at great risk. This risk is clearly a "greater than necessary" punishment, especially considering that none of Mr. Boykin's crimes include violent acts. *See* 18 U.S.C. § 3553(a). Additionally, Mr. Boykin has continued his writing as well as taken several courses during his time in prison, which provided him with needed educational training. *Id.* at § 3553(a)(2)(D); *see also Pepper v. United States*, 562 U.S. 476 (2011)(holding that a court may consider post-offense conduct, either positive

or negative, in assessing whether to adjust a previously imposed sentence). Though the Government notes that Mr. Boykin would still have been facing "statutory mandatory minimum sentences of 10 years" without the career offender enhancement, *see* Gov't's Opp'n, ECF No. 81 at 15, the Government misses the main point, which is that had Mr. Boykin been facing sentencing today, the negotiations would have been materially altered if a "life sentence" were not on the table. Under the law, as it now stands, and in view of the current pandemic as well as Mr. Boykin's health conditions, the Court finds that the defendant's sentence is greater than necessary. *See United States v. Smith*, No. 14-cr-189 (TSC), ECF No. 76, at *4 (D.D.C. May 14, 2020) ("[C]ourts have held, noted, and implied that a change in law [can] affect[] the fairness of the sentence. . . .").

Other courts in this district have evaluated other defendants with extensive criminal backgrounds and have come to a similar result. In *United States v. Hammond*, the court found in favor of a cancer-stricken defendant, with a lengthy criminal background, who was serving a sentence for unlawful possession of a firearm by a convicted felon and armed robbery with a firearm). 2020 WL 1891980, at *1. In *United States v. Curtis*, the court ordered the release of a wheelchair-bound defendant, who was serving a life sentence, for numerous federal offenses arising out of a sex-trafficking operation involving minors.

No.03-CR-533 (BAH), 2020 WL 1935543, at *1 (D.D.C. Apr. 22, 2020).

Upon consideration of the factors set forth in 18 U.S.C. § 3553(a) and Mr. Boykin's post-sentencing rehabilitation, the Court will exercise its authority under the First Step Act to impose a reduced sentence of "time-served," which is sufficient and not longer than necessary to achieve the goals of sentencing.

## IV.   CONCLUSION

For the reasons stated above, Mr. Boykin's Emergency Motion for Compassionate Release, ECF No. 77, is **GRANTED.**[2]

**Accordingly, it is hereby**

**ORDERED** that the defendant is **RESENTENCED** with the original sentence of 180 months of imprisonment reduced to **TIME SERVED;** and it is further

**ORDERED** that, as a condition of supervised release, the defendant must contact the Probation Office by telephone within 72 hours of his release; and it is further

**ORDERED** that, as a condition of his supervised release, for the duration of a 12-month period, the defendant will be restricted to his residence at all times except for medical

---

[2] The Court declines to impose a "a 14-day quarantine period and medical clearance" prerequisite for Mr. Boykin's release as the Government has requested. *See* Gov't's Opp'n, ECF No. 81 at 17 n.10.

necessities and court appearances or other activities specifically approved by the Court or the Probation Office.

**ORDERED** that all other provisions of the sentence imposed on January 29, 2016, remain in effect.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**July 16, 2020**